UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAREY PORTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11-CV-4577 |
| LAUREN ROBEL; | ) |
| MICHAEL McROBBIE; | ) Judge John W. Darrah |
| KAREN HANSEN; | ) |
| BOARD OF TRUSTEES; | ) |
| and INDIANA UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carey Portman filed his *pro se* Complaint on July 6, 2011, against Defendants Lauren Robel, Michael McRobbie, Karen Hansen, the Board of Trustees of Indiana University, and Indiana University. Portman alleges Defendants: (1) committed attorney malpractice by negligence; (2) committed attorney malpractice by breach of contract; (3) committed fraud; and (4) committed intentional infliction of emotional distress against Portman. Defendants filed a Motion to Dismiss Portman's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

In Portman's lengthy, disjointed Complaint, he alleges the following facts. Defendant Lauren Robel, Dean of the Indiana University Maurer Law School, was appointed as Portman's legal counsel to represent Portman in an appeal. (Compl. ¶¶ 13-16.) This appeal stemmed from a criminal complaint filed against Portman on

January 21, 2004, regarding bank fraud. (*See United States v. Portman*, N.D. Ill., Case No. 04-cr-64, Dkt. No. 1.) Portman was found guilty by a jury on counts of bank fraud and possession of counterfeit checks, and judgment was entered against Portman on November 20, 2006. (*United States v. Portman*, N.D. Ill., Case No. 04-cr-64, Dkt. No. 141.) Portman was sentenced on October 26, 2007. (*Id.* at Dkt. No. 176.)

Portman had multiple attorneys withdraw from their representation of him in his criminal matter. (*Id.* at Dkt. Nos. 42, 85.) Defendant Lauren Robel was appointed by the Seventh Circuit to represent Portman on the appeal of his conviction on December 28, 2007. (Compl. ¶ 17.) On April 17, 2008, Robel filed a motion to withdraw as appointed counsel for Portman pursuant to Seventh Circuit Rule 51(b), in conjunction with an "*Anders* Brief" in accordance with *Anders v. California*, 386 U.S. 738 (1967) (*Anders*). (*Id.* ¶ 20.) In the *Anders* Brief, Robel explained that any argument to be advanced by Portman in support of his appeal was wholly frivolous. (*Id.*) Thereafter, however, Robel participated in Portman's resentencing; Portman was resentenced on November 18, 2008, to correct the district court's erroneous increase of Portman's offense level. (*United States v. Portman*, N.D. Ill., Case No. 04-cr-64, Dkt. No. 275.) Portman, dissatisfied by Robel's withdrawal and *Anders* Brief, alleges Robel failed to communicate and respond to legal questions Portman had relating to his appeal. (Compl. ¶¶ 18, 21.)

However, Robel continued to represent Portman in his subsequent appeal, arguing that the district court failed to properly consider Portman's diminished capacity with regards to his sentence. (*United States v. Portman*, 7th Cir. Case No. 09-1083 Dkt. No. 9.) Despite this appeal, the Seventh Circuit affirmed Portman's sentence. (*Id.* at Dkt.

No. 28.) Portman alleges Robel "failed to incorporate all issues that Portman requested to be argued" in his appeal. (Compl. ¶ 31.)

Beyond this, Portman submits some extraordinary allegations against Defendants. For example, Portman alleges "Robel was providing free law services to enhance the reputation of the (Indiana University) law school but deliberately failed to meet her obligations to the Plaintiff and other clients to represent them." (Compl. ¶ 36.) He further alleges that in order to avoid being sued by Portman, Defendants caused him to be "sent back to Federal prison even though there with [sic] no charges of any kind whatsoever. This was a deliberate act to prevent the Plaintiff from filing a lawsuit against the Defendants. The Plaintiff was taken by U.S. Marshals and taken to Broward County Jail where he had no medications for over 48 hours that caused him to be comatose and in shock." (Compl. ¶ 39.) Portman further claims, "Defendant Robel acts [sic] were willful and wanton to create a situation to deliberately harm her client and to cause additional harm to his aged mother (84 years old) who he was taking care of." (Compl. ¶ 40.) Somehow, Portman seeks to implicate the other Defendants in these acts alleged to have been performed by Robel: "The acts of the Defendants, McRobbie, Robel, Hansen and the Board of Trustees to condone such unlawful actions against the Plaintiff and other unsuspecting parties for receiving legal representation on a pro-bono [sic] basis by the Defendant Robel and the Indiana University Maurer Law School are reprehensible, willful and wanton. . ." (Compl. ¶ 43.) Based on these facts, Portman claims attorney malpractice (both by negligence and breach of contract) against *all* Defendants, as well as fraud and intentional infliction of emotional distress. Defendants moved to dismiss

3

Portman's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and after multiple extensions of time, the issue has been fully briefed and is ripe for ruling.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8. A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. When considering a motion to dismiss under Rule 12(b)(6), a complaint filed by a *pro se* litigant is to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

# ANALYSIS

*Claims Alleged Against Defendants McRobbie, Hansen, Board of Trustees, and Indiana University*

To the extent all four Counts of Portman's Complaint are claims alleged against Defendants McRobbie, Hansen, the Board of Trustees, and Indiana University, Defendants argue, these counts are dismissed for failure to provide those Defendants with fair notice of the claims alleged against them under Fed. R. Civ. P. 8(a).

As the Seventh Circuit recently noted, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [the plaintiff] that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Nothing in Portman's Complaint provides any facts which might permit a reasonable inference that these Defendants are liable for any misconduct. *See Iqbal*, 129 S. Ct. at 1949. All the allegations Portman asserts arose out of Robel's representation of Portman. Portman argues in response to Defendants' motion that the Defendants, besides Robel, "caused his re-incarceration as further acts which caused irreparahable [sic] harm and damage to the Plaintiff" and were responsible for Robel's actions as the Dean of the Indiana Law School. (Pl.'s Resp. at 9.) Portman's allegations are unsupported by the facts alleged in his Complaint. Moreover, Portman's allegations against these Defendants are simply implausible. Therefore, Defendants' Motion to Dismiss Portman's claims against Defendants McRobbie, Hansen, the Board of Trustees, and Indiana University is granted.

*Attorney Malpractice by Negligence*

Portman alleges Robel committed attorney malpractice by failing to inform Portman she planned to file an *Anders* brief and for failing to disclose "private attorney-client communications to the Plaintiff and with the Office of the United States Attorney after Defendant Robel filed a motion to withdraw as the Plaintiff's legal counsel." (Compl. ¶ 50.) Portman's allegations border on the absurd, further claiming Defendant Robel "secretly endors[ed] the positions of the United States of America by and through the office of the U.S. Attorney to prevent the Plaintiff from being remanded and repentance [sic]." (*Id.* ¶ 53.)

As this case is premised on diversity jurisdiction, Illinois law is applicable. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). To succeed on a legal malpractice claim, a plaintiff in Illinois must show: "(1) the existence of an attorney-client relationship giving rise to a duty on the part of the attorney; (2) a negligent act or omission by the attorney constituting a breach of that duty; (3) proximate cause establishing that, but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Sobilo v. Manassa*, 479 F. Supp. 2d 805, 813 (N.D. Ill. 2007) (citing *Mihailovich v. Laatsch*, 359 F.3d 892, 904 (7th Cir. 2004) (*Mihailovich*)). The malpractice cause of action, therefore, essentially requires a plaintiff to present two cases: "one showing that her attorney performed negligently, and a second or predicate 'case within a case' showing that she had a meritorious claim that she lost due to her attorney's negligence." *Mihailovich*, 359 F.3d at 904-905. In Portman's case, he can show neither.

The first element of this claim, the existence of an attorney-client relationship, is met: it is undisputed that Robel was appointed to represent Portman. However, Portman fails to allege the next element, a negligent act or omission on the part of Robel in her representation of Portman. Specifically, Portman argues Robel committed malpractice in her filing of the *Anders* Brief and that the "filing of an Anders Brief . . . was contrary to the best interest of the Plaintiff." (Compl. ¶ 60.) Robel's filing of the *Anders* Brief did not constitute a negligent act or omission. Rather, Robel was obligated to file an *Anders* Brief once she determined that Portman's position on appeal was frivolous. *See Anders*, 386 U.S. 738. In *Anders*, the Supreme Court held that appointed counsel in a criminal case must continue representation unless otherwise relieved and that appointed counsel for an indigent defendant may withdraw only if the defendant's appeal is frivolous. *Id.* "An '*Anders* brief' is designed to show that counsel gave the case his best shot and to provide the court with the tools necessary to establish whether the case is indeed frivolous." *DiAngelo v. Illinois Dept. of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989). Robel was obligated to submit the *Anders* Brief upon finding Portman's appeal presented no nonfrivolous issues. *Id.* Her filing was neither an act nor an omission amounting to a breach in her duty as Portman's attorney. Moreover, Portman was notified of Robel's intent to file the *Anders* Brief, and Portman submitted to the Seventh Circuit objections to the Brief. (Compl. ¶¶ 20-24.) The *Anders* opinion provides that "[a] copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.

Defendant Robel complied with these requirements, and Portman was able to submit objections to the *Anders* Brief. By filing the *Anders* Brief, Robel did not commit legal malpractice but, rather, conducted herself in accordance with federal law.

Furthermore, after the Seventh Circuit received Robel's *Anders* Brief and her motion to withdraw pursuant to Fed. R. App. P. 51(b), it received a Joint Motion to Remand for Limited Resentencing, filed jointly by Robel, on behalf of Portman, and the Government. Thereafter, the Seventh Circuit *granted* the motion to remand for limited resentencing, whereupon Portman's sentence was reduced. (*United States v. Portman*, N.D. Ill., Case No. 04-cr-64, Dkt. No. 275.) Moreover, the Seventh Circuit deemed Robel's motion to withdraw as counsel, as well as Portman's Motion to Strike the *Anders* Brief, *moot*, and Robel continued in her limited representation of Portman. (*United States v. Portman*, N.D. Ill., Case No. 04-cr-64, Dkt. No. 259.) Portman fails to allege any acts or omissions which could possibly constitute negligence tantamount to attorney malpractice.

Even if Portman had alleged an act or omission of Robel that might constitute negligence in her representation of Portman, Portman alleges no facts to indicate that, but for Robel's alleged negligence, he would have prevailed in his appeal. Rather, as mentioned above, in spite of the filed *Anders* Brief, Robel continued to represent Portman, joining with the Government in a motion for a remand to reduce his sentence. After his sentence was reduced, Robel persisted in her representation of Portman, arguing to the Seventh Circuit that Portman's sentence failed to account for his diminished capacity and that Portman's bank fraud schemes were so preposterous that the district

court overstated the seriousness of his crimes. *United States v. Portman*, 599 F.3d 633 (7th Cir. 2010). This appeal was unsuccessful. *Id.* Portman does not allege any facts that would support that, but for Robel's representation, the disposition of his appeal would have differed. Therefore, Portman's claim of attorney malpractice by negligence is dismissed.

*Attorney Malpractice by Breach of Contract*

Portman's second count in the Complaint alleges malpractice on the part of Robel by breach of contract. However, this allegation is essentially the same as the first count, discussed above, alleging malpractice by Robel's negligence. Portman claims, "The Defendants further breached the contract and their duty of good faith and fair dealing by not disclosing to Plaintiff Portman their filing an Anders Brief . . . and caused the Plaintiff to be charged security violations by filing false reports to the Bureau of Prisons." (Compl. ¶ 64.) To the extent Portman alleges malpractice on the basis of Robel's *Anders* Brief, as discussed above, this claim is dismissed. Portman's allegations are unsupported and nonsensical; moreover, Portman never alleges that a valid, enforceable contract ever existed between Robel and Portman. Because Portman's claims fail to be even plausible on the face of the Complaint, Portman's claim of attorney malpractice by breach of contract is dismissed. *Iqbal*, 129 S. Ct. at 1949.

*Fraud*

Next, Portman alleges Robel committed fraud by filing the *Anders* Brief, which Portman claims eventually led to him being removed from home confinement and placed back in prison. (Compl. ¶ 74.)

To allege fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Illinois law, a plaintiff alleging fraud must show: "(1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance." *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 434 (7th Cir. 1996) (*Athey*).

Here, however, Portman has failed to allege Robel made intentional misrepresentations to Portman that would have induced Portman to act in some way. Even construing Portman's Complaint liberally, as he is a *pro se* plaintiff, Portman never alleges an intentional misrepresentation; rather, he claims Robel failed to inform Portman about her intent to file an *Anders* Brief. If anything, this is an omission, rather than a "false statement of a material fact," necessary to allege fraud. *Athey*, 89 F.3d at 434. Moreover, Portman does not allege this omission somehow induced him to act in some way. Having failed to allege *any* of the elements of a claim of fraud, let alone with the particularity required by the Federal Rules of Civil Procedure, Portman's claim of fraud against Robel is dismissed.

*Intentional Infliction of Emotional Distress*

Finally, Portman alleges Robel intentionally inflicted emotional distress upon Portman by, for example, "canceling all legal services to the Plaintiff," "leading others to believe that the Plaintiff made threats against Lauren Robel where he was sent back to prison for an additional four months," and "failing to take any action of any kind to assist

10

the Plaintiff after becoming the victim of a vicious hate crime that caused him severe injuries where his life became at severe risk." (Compl. ¶ 82.)

"An intentional infliction of emotional distress claim in Illinois requires that the defendants' conduct be 'extreme and outrageous.' To meet this standard, the defendant's conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Hukic v. Aurora Loan Services*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, (1992)). None of Portman's allegations against Robel meet this heightened standard.

Essentially, Portman was, and remains, troubled by Robel's filing of an *Anders* Brief in his criminal case, indicating to the Seventh Circuit that his appeal was frivolous and without merit. However, Robel, as discussed, was obligated to file this brief and did so to comply with federal law. Nothing Robel is alleged to have done in Portman's Complaint rises to the level of "extreme and outrageous" conduct; in fact, nothing alleged in the Complaint appears to be tortious conduct. Therefore, Portman's final claim, alleging intentional infliction of emotional distress, is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted, and Portman's Complaint is dismissed.

Date: 6/28/12

JOHN W. DARRAH
United States District Court Judge